REGAN, Judge.
Plaintiff, Emile M. Doll, as owner of certain property designated as Lot One forming the corner of Poland Avenue and N. Galvez ■Street, instituted this suit against the defendants, The Flintkote Company and the City of New Orleans, endeavoring to obtain a declaratory judgment annulling both a consummated exchange of property between the City of New Orleans' and The Flintkote Company, and Ordinance No. 18,706 C.C.S., which authorized the exchange.
Defendants in response thereto pleaded the exceptions of no cause or right of action which were maintained and plaintiff’s suit was dismissed. From that judgment he has prosecuted this appeal.
The pertinent portion of plaintiff’s petition is substance alleges that the exchange of property which occurred between the City of New Orleans and The Flintkote Company in conformity with Ordinance No. 18,706 C.C.S. is a nullity for the reason that only five members of the Commission Council voted in favor of its adoption, whereas an affirmative vote of two-thirds or six of the eight.members of the Council is necessary to create a valid ordinance.
' The record reflects the colloquies which occurred between the court and respective counsel during argument on the exceptions, which reveal that the plaintiff’s property does not abut upon that portion of Poland Street, which was closed by the ordinance and act of exchange, therefore, the closing of this ñon-contiguous street has not denied or obstructed ingress to or egress from the property of the plaintiff. In fact, plaintiff’s ■counsel made such an unqualified admission upon being interrogated by the Judge of the court, a qua.
The only question which the pleadings and the exceptions pose for our consideration is one of law and that is whether an affirmative vote of two-thirds of a quorum of Council members present is sufficient to enact a valid ordinance of the City of New Orleans?
The right of the City to enter into an act of exchange of a street area for other property is made abundantly clear by virtue of the enactment of LSA-R.S. Title 33:3741 and the Charter of the City of New Orleans, Act No. 159’of 1912, Sec. 8, as amended by Act No. 378 of 1948, Sec. 1, which respectively provide:
LSA-R.S. 33:3741. — “Exchanging public property for other property for public purposes.
*577 “The governing authority of any municipality may, by ordinance, unless otherwise specifically prohibited or restricted by existing law, exchange any public property owned by said municipality] except municipally owned cemeteries, including streets or parts of streets, with property owners for any public purpose. The properties to be exchanged must be appraised by competent appraisers and shall be of approximately equal value. The governing body, however, may pay or receive any difference in value in cash. All contracts of exchange made under the provisions of this Section shall be in notarial form and by ordinance dedicating the property to a specific use. As amended Acts 1950, No. 301, § 1.”
Act No. 378 of 1948 — “Section 8. The Commission Council shall also have power:
“Public Streets
“(1) to order the ditching, filling, opening, widening, and paving of the public streets, and to regulate the grade thereof, and, by a two-thirds vote to sell or change the destination of any street, side-walk or other property which is no longer necessary for the public use to which it was originally destined, *
The plaintiff predicates his case almost entirely upon his contention that Section 8 of the City Charter governs this exchange transaction, and requires authorization by a two-thirds vote of the entire membership of the Commission Council.
The specific statutory authority for municipal action by way of an exchange of street area for other property, is, in our opinion, not found in Section 8 of the Charter of the City of New Orleans, but is embodied in the general statute referred to hereinabove applicable to any and all municipalities. This statute contains no requirement for a two-thirds vote. Action under this general statute by any municipality obviously requires only the normal and usual elements of valid action by the governing body of the municipality — the presence of a quorum at the meeting and such vote in favor of the ordinance as is required generally for the adoption of an ordinance. Plaintiff does not assert that this ordinance which he assails has failed to meet these requisites. But, assuming arguendo, that the City Charter does govern this exchange transaction, a view which plaintiff believes is most favorable to his case, then we are of the opinion that Section 8 of Act No. 378 of 1948 providing that the Commission Council has the power by a two-thirds vote to sell or change the destination of any street when no longer necessary for' the public use clearly means a two-thirds vote of the members present, if there be a quorum present, and not a two-thirds vote of the entire Council.
The plaintiff admits that there were five members present when the ordinance was considered and that all five members unanimously voted in favor of the ordinance. This satisfies both the requirement of Sec. 8 for a quorum and Sec. 9 for a minimum of five affirmative votes necessary to enact an ordinance. If the charter intended that the two-thirds provision meant two-thirds of all the elected council members, the charter would hav'e expressly said so. In the absence of any qualifying clause, the charter must be interpreted to mean two-thirds of the members present and constituting a quorum.
In Warnock v. City of Lafayette, 4 La. Ann. 419, the Court expressed the opinion that the power of removing municipal officers for malfeasance “conferred upon the City Council of Lafayette by Sec. 11 of the Stat. of 29 April 1846,.to be exercised, ‘by a vote of two-thirds of that body’, must be construed as meaning two-thirds of that body as legally constituted by the presence of a quorum and not two-thirds of the whole number of members composing the council.”
In State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94, 99, the Court had to determine whether the requirement, in Section 34 of Article VII of the Louisiana Constitution, for a “two-thirds vote of the membership of each house”, necessitated a vote of two-thirds of the entire membership or of *578 two-thirds of the quorum present and voting. After analyzing the problem and reviewing the pertinent authorities, the Court said:
“It is clear, therefore, that a ‘two-thirds vote of the membership of each house’ as required by section 34 of article 7 of the Constitution, means two-thirds of a quorum of each House.”
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.