CULPEPPER, Judge.
This is an action to try right to office brought under LSA-R.S. 42:76, et seq., commonly called the “Intrusion into Office Statute.” The plaintiff, Paul Broussard, contends he is rightfully entitled to the office of Superintendent of Schools in Lafayette Parish, and that the defendant, Harold Gauthe, unlawfully holds and is in possession of that office. After exceptions of no cause of action and nonjoinder of an indispensable party (Lafayette Parish School Board) were overruled, a trial on the merits resulted in judgment for plaintiff. Defendant appealed.
THE EXCEPTION OF NO CAUSE OF ACTION
Defendant’s exception of no cause of action is based first on the contention that the Superintendent of Schools is not a public officer within the contemplation of LSA-R.S. 42:76 which provides in pertinent part:
“An action shall be brought in the name of the state in any of the following cases :
“(1) When any person usurps, intrudes into, or unlawfully holds or exercises or attempts to remain in possession of any public office or franchise within the state.”
Defendant argues that in State ex rel. Harvey v. Stanly, 173 La. 807, 138 So. 845 (1931) our Supreme Court held a superintendent of parish schools is not a public officer within the meaning of the statute in question. In that case, the defendant Stanly was discharged as Superintendent of Schools under Act 100 of 1922, the source of our present LSA-R.S. 17:54, which authorized school boards to dismiss superintendents “found incompetent, inefficient or unworthy.” The Board then elected Harvey as the new superintendent. When Stanly refused to vacate the office, Harvey filed suit under the Intrusion into Office Statute. , Stanly’s defense was twofold. He first contended the superintendent of schools is a public officer, that public officers can be removed only under La.Const., Article 9, Section 6, which provides for the impeachment or removal of public officers and therefore Act 100 of 1922, providing for removal of superintendents by school boards, was unconstitutional. Our Supreme Court rejected this argument and held as follows:
“But these provisions for the impeachment or removal of public officers are *831 applicable only to an officer elected by the electors of the state or of the district, parish, ward, or municipality in which the officer functions, or to an officer appointed by the Governor. They were not intended to be applied to subordinate officers employed or elected by local administrative or executive boards or commissions, so as to deprive the Legislature of the power to provide for a prompt removal for causes it might deem sufficient of such subordinate officer by the board of commission by whom he was employed or elected.
“A parish superintendent cannot be regarded as a public officer, within the meaning of section 6 of article 9 of the Constitution of 1921, providing for the removal of a public officer by the judgment of the district court of his domicile.”
The alternative defense urged in Harvey v. Stanly, supra, was that if the statutory provisions for removal of the superintendent by the school board did apply, his re^ moval was illegal because there were no allegations by the board that he was “incompetent, inefficient or unworthy.” On the alleged facts, the court found this contention well founded and dismissed the plaintiff’s suit.
Harvey v. Stanly, supra, does not support defendant’s position that the superintendent of schools is not a public officer within the meaning of LSA-R.S. 42:76. On the contrary, that case found an intrusion into office suit against a superintendent of schools to be constitutional and considered the case on the facts. Thus, the Stanly case stands for the proposition that an intrusion into office action can be brought against a superintendent of schools.
Defendant’s second contention, in support of his exception of no cause of action, is that he has not “usurped” the office within the meaning of LSA-R.S. 42:76. The argument is that by usual definition a “usurper” is one who without authority intrudes himself into an office. Defendant says he was elected to the office at a board meeting on December 1, 1972. That he assumed and now holds the office with the authority and consent of the School Board. Hence, he is not a usurper. The answer to this semantical argument is that LSA-R.S. 42:76 allows the action not only against a usurper but also against any person who “unlawfully holds or exercises or attempts to remain in possession of any public office.” Under the allegations of the petition, it is clear that defendant unlawfully holds possession of the office.
We conclude the district judge correctly overruled the exception of no cause of action.
THE EXCEPTION OF NONJOINDER OF AN INDISPENSABLE PARTY
In an exception of nonjoinder of an indispensable party, defendant contends Lafayette Parish School Board must be made a party in this suit, since defendant holds the office by authority of the School Board. It is noteworthy that the School Board did intervene in these proceedings as a party defendant. The board was not represented by counsel at the trial, but the record shows that its counsel waived the right to be present. Furthermore, the School Board has joined in the appeal to this court. Nevertheless, regardless of the intervention by the School Board, it is not an indispensable party. LSA-R.S. 42:77 expressly provides that “the action may be brought by any person demanding possession of the office against any person claiming or exercising the functions of the office.” There is no requirement in the statute that plaintiff name as a party the governing board or other authority under which defendant claims the office.
THE FACTS ON THE MERITS
The essential facts are not in dispute. In 1969, F. C. Delana was elected Superin *832 tendent of Schools of Lafayette Parish for a 4 year term ending July 1, 1973. At a meeting of the Board on August 18, 1971, Mr. Delana announced his retirement effective December 1, 1971, and requested to be released from his contract.
At a board meeting on September 1, 1971, the president appointed a committee to receive applications for the position of superintendent. At a board meeting on October 6, 1971, the chairman of this committee requested applications and announced that the new superintendent would be appointed by the Board at its meeting on November 17, 1971. Plaintiff and defendant filed applications.
At the meeting on November 17, 1971, only 14 of the Board’s 15 members were present. The minutes show that this was a quorum. The minutes also reflect that a .motion was made and seconded to nominate Mr. Paul Broussard as “superintendent.” A substitute motion was then made and seconded that Mr. Harold Gauthe be nominated as “superintendent”. The vote on the substitution motion was 6 for and 7 against, and the chair announced that the substitution motion failed. The original motion to appoint Mr. Broussard was then called for a vote and passed 7 to 6. Mr. Dupuis, the president of the Board, did not vote on either motion.
After the vote was taken and recorded, the president ruled that “no superintendent had been elected because neither of the candidates had received 8 votes.” The chair’s ruling was challenged and the vote on the motion to overrule the chair was 7 for and 6 against. The chair announced that the motion to overrule the chair had failed since it did not receive “the required two-thirds of the votes.”
At its next regular meeting on December 1, 1971, all 15 members of the Board were present. A motion was made and seconded that the portion of the minutes of the meeting of November 17, 1971, relating to the appointment of Mr. Broussard as Superintendent of Schools, be rescinded and annulled. The motion carried 8 to 7. A motion was then made and seconded that the Board appoint an “acting superintendent” effective beginning December 1, 1971, until June 30, 1972, and that a full-term superintendent be appointed for four years commencing July 1, 1972. The motion carried 8 to 7. Plaintiff and defendant were then nominated. The vote was 8 to 7 in favor of Mr. Gauthe. The chair declared Mr. Gauthe elected and he assumed and still holds the office.
PLAINTIFFS CONTENTION THAT HE WAS DULY ELECTED ON NOVEMBER 17, 1971
Essentially, plaintiff contends that he was duly elected Superintendent by the Board at its meeting on November 17, 1971, that once appointed he could not be removed except for cause and after due notice under LSA-R.S. 17:54, and hence the office was not vacant and the action of the Board on December 1, 1971, in attempting to remove plaintiff and appoint defendant, was illegal and of no effect.
One of the principal issues is the Rules of Parliamentary Procedure of the School Board. LSA-R.S. 17:81, which sets forth the general powers of school boards, provides in pertinent part:
“Each school board is authorized to make such rules and regulations for its own government, not inconsistent with law or with the regulations of the Louisiana State Board of Education, as it may deem proper.”
The minutes of the meeting of the Board on January 2, 1957 show a motion was adopted that “meetings be conducted under Roberts Rules of Order.” Insofar as the evidence shows, this action has never been revoked or amended. Therefore, Roberts Rules of Order constitute the Rules of Parliamentary Procedure of the School Board, except where inconsistent with law or the regulations of the State Board of Education.
*833 Roberts Rules of Order Revised, 75th Anniversary Edition, Article VIII, Section 46 provides in pertinent part:
“When a quorum is present, a majority vote, that is a majority of the votes cast, ignoring blanks, is sufficient for the adoption of any motion that is in order, except those mentioned in' Section 48, which require a two-thirds vote.”
Roberts Rules of Order also provide, Section 64, that as a general rule unless the bylaws, charter, constitution or rules of the body provide for a smaller quorum, the quorum of a body is a majority of its members. Hence, in the instant case where 14 of the 15 members were present, there was a quorum. Actually, no question is raised in this regard. The minutes themselves state that a quorum was present.
Since a quorum was present on November 17, 1971, a majority of the votes cast, ignoring abstentions, was sufficient for any motion that was in order, except those listed in Section 48 of Roberts Rules, none of which are applicable here. The vote on the motion to appoint Mr. Broussard was 7 for and 6 against, with the president, Mr. Dupuis, abstaining. Hence, the motion carried.
Although the motion to appoint Mr. Broussard passed, the minutes reflect that “President Dupuis ruled that no superintendent had been elected because neither of the candidates had received 8 votes.” A motion made and seconded to overrule the chair received a vote of 7 for and 6 against. Nevertheless, the minutes reflect “The motion to overrule the chair failed due to the fact that the motion did not receive the required two-thirds of the votes.”
Of course, under Roberts Rules of Order, Section 46, after a vote is taken the chair must announce the results and state whether or not the motion carried. The chair has no authority to defeat a duly adopted motion of the Board by simply announcing that it did not pass. Therefore, the announcement by President Dupuis that Mr. Broussard had not been elected was of no effect.
Furthermore, under Roberts Rules of Order, a motion to overrule the chair requires only a majority of the votes cast, ignoring abstentions, when a quorum is present, Section 46. The motion to overrule the chair is not one of those listed in Section 48 as requiring a two-thirds vote. Hence, when the motion to overrule the chair received a vote of 7 for and 6 against, it passed and the chair was overruled.
Defendant’s principal contention is that since under LSA-R.S. 17:54 a superintendent can be removed for cause “by a majority vote of the membership of the parish school board”, it necessarily follows that a majority of the entire elected membership is necessary to appoint a superintendent. And that under this reasoning 8 votes would be required to either appoint or remove a superintendent.
There is a very serious question as to whether, under the quoted language of the statute, a majority vote of the full elected membership of the school board is required to remove a superintendent. In State ex rel. Garland v. Guillory, 184 La. 329, 166 So. 94 (1935) the issue concerned La. Const. Art. 7, Section 34 which provides that “The Legislature may rearrange the judicial districts, and by a two-thirds vote of the membership of each house, may increase or decrease the number of judges in any district.” Our Supreme Court held that the phrase “a two-thirds vote of the membership of each house” means two-thirds of a quorum present and not two-thirds of the elected membership. To the same effect, see also Warnock v. City of Lafayette, 4 La.Ann. 419; Mix v. City of New Orleans, 126 So.2d 1 (4th Cir. 1960) and Doll v. Flintkote Company, 231 La. 241, 91 So.2d 24 (1956). Nevertheless, pretermitting this issue, because it is not necessary to our decision, there is no statutory or jurisprudential authority for the *834 proposition that the appointment of a superintendent of schools requires a majority vote of the entire elected membership of the school board. It is noteworthy that in the present case the School Board contacted the Attorney General for an opinion regarding the issue, and he advised “That if a quorum of the School Board was present that a majority of those voting for the nomination of a superintendent is sufficient to elect. See R.S. 17:54.” We think this is correct. Therefore, in the present case the vote of 7 to 6 on November 1, 1971 was sufficient to elect Mr. Broussard superintendent.
Defendants also contend that the election of Mr. Broussard on November 17, 1971 was premature and illegal. The argument is that since the four year term of Mr. Delana did not expire until July 1, 1973, only an “acting superintendent” could be elected to serve until that time. In support of this contention, defendant relies on State ex rel. Russell v. Richardson, 178 La. 1029, 152 So. 748 (1934). In that case the court construed Section 19 of Act No. 100 of 1922, the source of our present LSA-R. S. 17:54, which provides for the election of superintendents for four year terms beginning July 1, 1925. The statute provides no fixed time for holding the elections. In January of 1929, the board elected Richardson to serve for a four-year term beginning July 1, 1929. Then, in July of 1932, which was about a year before the expiration of Richard’s four-year term, he was re-elected by the board for another term of four years beginning July 1, 1933. After the new school board was elected, it had a meeting in January, 1933, rescinded Richardson’s re-election and elected Russell as superintendent. When Richardson refused to vacate the office, Russell filed suit. The court held that although Section 19 of Act 100 of 1922 provides no fixed time for holding the elections, it was “the legislative intention that a parish school superintendent should be elected or appointed at some reasonable time before the beginning of his term of office.” The court held that Richardson’s election for a new four-year term one year before that term began was an unreasonably long time, and that his election was invalid. The rationale expressed by the court is that each newly elected school board should be allowed to select its own superintendent.
The Richardson case is distinguished from the present matter. In the present case, Broussard was elected only for the unexpired portion of the term of Delana. Under the rationale of the Richardson case, Broussard’s term could not extend beyond the date of expiration of Mr. Dela-na’s term. There is no violation here of the rationale of Richardson, which is to allow the newly elected school board to choose its own superintendent.
Defendants next contend that although the word "superintendent” was used in the minutes of the Board of September 1, 1971, when a committee was appointed to receive applications for a superintendent, of October 6, 1971, when it was announced that a new superintendent would be elected, and of November 17, 1971 when the election actually took place, it was actually the intention of the Board to elect only an “acting superintendent” to serve at the pleasure of the Board.
The first time the words “acting superintendent” appear in the minutes is in those of the December 1, 1971 meeting, at which time Mr. Gauthe was elected “acting superintendent.” Although there is no express statutory authority for the Board to elect an “acting superintendent”, there is no prohibition against it, and we think it is within the general powers of the Board, LSA-R.S. 17:81, to appoint an acting superintendent to serve until a new superintendent can be elected. However, in the present case Mr. Delana gave adequate notice of his intention to retire. There was no emergency necessitating the appointment of an acting superintendent. Under all the circumstances, it is clear that it was not the intention of the Board to elect an “acting superintendent” on November 17, *835 1971. They intended to elect a “superintendent” to serve the remainder of Mr. De-lana’s four year term.
THE MEETING OF DECEMBER 1, 1971
Having concluded that Mr. Brous-sard was duly elected superintendent at the meeting on November 17, 1971, he could not be removed except for cause and in accordance with the procedures required by LSA-R.S. 17:54. There was no attempt to remove Broussard under this statute. It follows that the action of the Board on December 1, 1971, rescinding the election of Broussard, is invalid and of no effect. Also, the appointment of Mr. Gauthe as “acting superintendent” is invalid since the office of superintendent is not vacant.
THE MOTION TO DISMISS THE APPEAL OF THE LAFAYETTE PARISH SCHOOL BOARD
Plaintiff filed a motion to dismiss the appeal of the Lafayette Parish School Board on the grounds that since no final judgment was rendered on the intervention of the Board, it has no interest in the appeal. It is our understanding that in oral argument before this court, plaintiff abandoned his motion to dismiss the Board’s appeal. In any event, it is clear that since the Board had sufficient interest to intervene, it also has sufficient interest to appeal under the provisions of LSA-C.C.P. Article 2086 which state: “A person who could have intervened in the trial court may appeal, whether or not any other appeal has been taken.” The motion to dismiss the School Board’s appeal is therefore denied.
DECREE
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant, Harold Gauthe.
Affirmed.